347 F.3d 752
 Jeffrey R. FREUND, Plaintiff-Appellee-Cross-Appellant,
v.
NYCOMED AMERSHAM, a business entity, form unknown; Amersham Holdings, Inc.; Nycomed Amersham Imaging, a division of Nycomed Amersham;
Amersham/Medi-Physics, Inc., a division of Nycomed Amersham, Defendants-Appellants-Cross-Appellees.
 No. 01-56491.
 No. 01-56494.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted November 5, 2002 — Pasadena, California.
 Filed October 21, 2003.
 
 COPYRIGHT MATERIAL OMITTED Diane Westwood Wilson and Andrew J. Harakas, Condon & Forsyth LLP, New York, NY, for the defendants-appellants-cross-appellees.
 John S. Adler, San Diego, California, for the plaintiff-appellee-cross-appellant.
 Appeal from the United States District Court for the Southern District of California; Irma E. Gonzalez, District Judge, Presiding. D.C. No. CV-99-02202-IEG(LSP).
 Before: William C. CANBY, Jr., Ronald M. GOULD, and Marsha S. BERZON, Circuit Judges.
 
 
 1
 Opinion by Judge CANBY; Dissent by Judge GOULD.
 
 ORDER
 
 2
 Judges Canby and Berzon have voted to grant the petition for panel rehearing in part and to deny it in part. Judge Gould has voted to grant the petition. The petition of Nycomed for panel rehearing is granted in part and denied in part. The majority and dissenting opinions filed in this case on April 22, 2003, and reported at 326 F.3d 1070, 1082, are withdrawn and the attached majority and dissenting opinions are ordered filed herewith.
 
 
 3
 Judge Berzon has voted to deny the petition for en banc rehearing, and Judge Canby so recommends. Judge Gould has voted to grant the petition for en banc rehearing. The petition for rehearing en banc, the response thereto, and the attached opinion have been circulated to the full court, and no judge has called for a vote to rehear the case en banc. The petition for rehearing en banc is denied.
 
 
 4
 No further petitions for panel or en banc rehearing may be filed. The mandate shall issue in due course.
 
 OPINION
 CANBY, Circuit Judge:
 
 5
 A jury in district court found that defendant Nycomed Amersham[1] had wrongfully terminated the employment of plaintiff Jeffrey R. Freund for making bona-fide safety complaints, thereby committing the California state-law tort of wrongful termination in violation of public policy. The jury awarded compensatory damages of $1,150,000 and punitive damages of $1,150,000. The district court overturned the jury's award of punitive damages, granting Nycomed judgment as a matter of law on that issue.
 
 
 6
 Nycomed now appeals the judgment of compensatory damages, and Freund appeals the order overturning the award of punitive damages. We affirm the judgment for compensatory damages and reverse the order overturning the punitive damages as a matter of law.[2] We remand for the district court to rule on Nycomed's motion for a new trial on the issue of punitive damages.
 
 Factual Background
 
 7
 In 1992, Freund was hired by Nycomed as a pharmacist in Nycomed's nuclear pharmacy in San Diego.[3] Freund was hired by Mike Wakefield, who remained his supervisor for the entire term of his employment. Freund eventually was appointed a "Radiation Safety Officer" with responsibility for safety compliance at the San Diego pharmacy. The San Diego pharmacy for which Freund worked was operated by Medi-Physics, Inc., which is a wholly-owned subsidiary of Nycomed.
 
 
 8
 After a few years, the relationship between Wakefield and Freund soured. They disagreed on a number of work-related issues, including the office temperature, the proper handling of laboratory equipment, and the company's work scheduling policies. Freund lodged complaints about staffing, expressing his concern that overwork of staff members increased the probability that they would make mistakes that endangered their safety and that of their customers. On one occasion, another employee, Mike Thomas, reported to Freund that he had seen Wakefield pierce his hand with a needle while preparing a radiopharmaceutical kit, causing blood to spill in the laboratory. Freund claimed that Wakefield never reported the incident as he was required to do. Freund also accused Wakefield of unfairly reprimanding Thomas for bringing the needle matter to Freund's attention.
 
 
 9
 Wakefield subsequently gave Freund a negative performance evaluation and a written warning for having an improper attitude and for failing to act as a positive example for other employees. The next day, a telephone conference was held between Freund, Wakefield, Rich De Veau, Nycomed's Director of Pharmaceutical Operations, and Karen Mertins, Nycomed's Human Resources Representative. Wakefield and De Veau admonished Freund for his "aggressive" and "confrontational" attitude. After the conversation, De Veau placed Freund on ninety days probation for his poor attitude and his failure to develop a better working relationship with Wakefield.
 
 
 10
 Shortly thereafter, Freund sent Wakefield several e-mail messages reiterating his earlier complaints and accusing Wakefield of opening his mail. Wakefield responded and then forwarded the entire correspondence to Mertins and De Veau. De Veau decided to terminate Freund's employment, and a letter was sent by Human Relations Director Vinci to Freund terminating Freund's services with Nycomed due to "disruptive behavior."
 
 Proceedings in the District Court
 
 11
 Freund filed a one-count complaint alleging that he was wrongfully terminated in violation of public policy.[4] Freund asserted that the public policy that was violated by his firing was expressed in California Labor Code § 6310,[5] which prohibits an employer from terminating an employee for raising bona fide complaints relating to workplace health or safety. Freund sought both compensatory and punitive damages.
 
 
 12
 The case proceeded to trial, and at the conclusion of the evidentiary phase, Nycomed moved for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(a), solely on the ground that Freund's complaints did not implicate any public policy that could give rise to a wrongful termination claim. The court denied the motion, and the jury returned a verdict in favor of Freund. The jury awarded Freund $20,000 in emotional distress damages, $1,130,000 in compensatory damages, and $1,150,000 in punitive damages.
 
 
 13
 Following the trial, Nycomed filed a motion for judgment as a matter of law, pursuant to Rule 50(b), in which it reiterated the argument from its earlier Rule 50(a) motion and also raised a new argument that the punitive damages award should be overturned because Freund did not prove that either De Veau or Vinci acted with malicious intent in terminating him. Nycomed also moved for a new trial pursuant to Federal Rule of Civil Procedure 59. The district court granted in part Nycomed's motion for judgment as a matter of law, overturning the jury's award of punitive damages, but upholding the jury's verdict that Freund was wrongfully terminated in violation of public policy. The court denied Nycomed's motion for a new trial. Both parties then appealed.
 
 Nycomed's Appeal
 
 14
 
 A. Ability of § 6310 to Support a Claim for Wrongful Termination
 
 
 
 15
 Unless the parties contract otherwise, employment relationships in California are ordinarily "at will," meaning that an employer can discharge an employee for any reason. See Cal. Labor Code § 2922. In Tameny v. Atlantic Richfield Co., 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980), the California Supreme Court carved out an exception to the at-will rule by recognizing a tort cause of action for wrongful terminations that violate public policy. See id. at 172, 164 Cal.Rptr. 839, 610 P.2d at 1332-33. More recently, that Court elaborated on its meaning of "public policy" sufficient to support a wrongful termination claim. The public policy must be "(1) delineated in either constitutional or statutory provisions; (2) `public' in the sense that it `inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." City of Moorpark v. Superior Court, 18 Cal.4th 1143, 1159, 77 Cal. Rptr.2d 445, 959 P.2d 752, 762 (1998) (internal quotation omitted).
 
 
 16
 Nycomed contends that § 6310 does not meet these requirements, particularly the requirement that it embody a "fundamental" public policy. We reject the contention because the California courts have long held to the contrary. In Hentzel v. Singer Co., 138 Cal.App.3d 290, 188 Cal.Rptr. 159 (1982), the Court of Appeal held that § 6310 embodies a public policy against retaliatory firings, and that violation of § 6310 could serve as the basis for a claim of wrongful termination in violation of public policy. See id. at 298, 188 Cal.Rptr. 159.
 
 
 17
 Nycomed argues that Hentzel is no longer good law in light of intervening decisions by the California Supreme Court. Nycomed relies particularly on Foley v. Interactive Data Corp., 47 Cal.3d 654, 670, 254 Cal.Rptr. 211, 765 P.2d 373, 380 (1988), which ruled that discharge of an employee for reporting an employer's embezzlement did not give rise to a claim for discharge in violation of public policy, and on Gantt v. Sentry Ins., 1 Cal.4th 1083, 1092, 4 Cal. Rptr.2d 874, 824 P.2d 680 (1992), overruled on other grounds by Green v. Ralee Eng'g Co., 19 Cal.4th 66, 80 n. 6, 78 Cal.Rptr.2d 16, 960 P.2d 1046, 1054 n. 6 (1998), which ruled that the requisite public policy must be clearly articulated in a statute or constitutional provision. The flaw in Nycomed's argument is that both Foley and Gantt cite Hentzel as an example of a situation in which a plaintiff can raise a wrongful termination claim because a public policy was violated. See Foley, 47 Cal.3d at 670, 254 Cal.Rptr. 211, 765 P.2d 373 (citing Hentzel for the proposition that an employee fired for "disclos[ing] other illegal, unethical, or unsafe practices" can bring a wrongful termination claim); Gantt, 1 Cal.4th at 1091, 4 Cal.Rptr.2d 874, 824 P.2d 680 (citing Hentzel as an example of a wrongful termination in violation of public policy for "reporting an alleged violation of a statute of public importance"). Furthermore, California appellate courts have continued to find that a violation of § 6310 gives rise to a wrongful termination tort action even after the Supreme Court's decisions in Foley and Gantt. See, e.g., Taylor v. Lockheed Martin Corp., 78 Cal.App.4th 472, 485, 92 Cal.Rptr.2d 873 (2000) ("A private cause of action for retaliatory discharge under Labor Code section 6310 is part of California's statutory scheme for occupational safety."); Cabesuela v. Browning-Ferris Indus., 68 Cal.App.4th 101, 107-10, 80 Cal.Rptr.2d 60 (1998); Barton v. New United Motor Mfg., Inc., 43 Cal.App.4th 1200, 1205, 51 Cal.Rptr.2d 328 (1996) ("An employer who fires an employee in retaliation for protesting unsafe working conditions violates fundamental public policy....") (citations omitted).[6] Thus, Hentzel and its progeny appear still to be good law in California notwithstanding the decisions in Foley and Gantt.[7]
 
 
 18
 In a variation of its argument that § 6310 cannot support a tort action, Nycomed contends that, because administrative remedies are provided for violations of § 6310, they are exclusive. The California courts have rejected this view, see, e.g., Stevenson v. Superior Court, 16 Cal.4th 880, 907, 66 Cal.Rptr.2d 888, 941 P.2d 1157, 1173-74 (1997), and we accordingly do so as well.
 
 
 19
 
 B. Whether Employee's Complaints Must Be Shown to Involve an Actual and Identifiable Health or Safety Violation
 
 
 
 20
 Nycomed's next argument is that, in evaluating Freund's claim for wrongful termination based on a violation of § 6310, the district court was required to determine whether the substance of Freund's complaints demonstrated the violation of a health or safety rule elsewhere set forth. We reject this argument as well; it is sufficient that Freund's complaints fell within the ambit of § 6310.
 
 
 21
 The public policy behind § 6310 is not merely to aid the reporting of actual safety violations, as Nycomed seems to assume; it is also to prevent retaliation against those who in good faith report working conditions they believe to be unsafe. See, e.g., Skillsky v. Lucky Stores, Inc., 893 F.2d at 1093 ("The public policy at stake here also involves `protecting the right of employees to voice their dissatisfaction with working conditions.'" (quoting Hentzel, 138 Cal.App.3d at 296-98, 188 Cal.Rptr. 159)); Foley, 47 Cal.3d at 670, 254 Cal.Rptr. 211, 765 P.2d 373 (noting interest in protecting employees who disclose unsafe working conditions). As long as the employee makes the health or safety complaint in good faith, it does not matter for purposes of a wrongful termination action whether the complaint identifies an actual violation of other workplace safety statutes or regulations. See Cabesuela, 68 Cal.App.4th at 109, 80 Cal. Rptr.2d 60. Nycomed's argument would add a requirement that California law simply does not support.
 
 
 22
 
 C. Whether Damages Are Limited to Those Specified in § 6310
 
 
 
 23
 The California Supreme Court has made it clear that damages for wrongful discharge in violation of public policy are not limited to those specified in the underlying statute that was violated. In Rojo v. Kliger, 52 Cal.3d 65, 276 Cal.Rptr. 130, 801 P.2d 373 (1990), two employees brought an action for wrongful discharge, and an action under the Fair Employment and Housing Act (FEHA), for sexual harassment. The court held that the plaintiffs' tort remedies were not limited to the remedies provided under FEHA, even though FEHA was the statute used to establish the public policy basis for the wrongful termination claim. See id. at 80-81, 276 Cal.Rptr. 130, 801 P.2d 373. The plaintiffs therefore could seek punitive damages on their tort theory, even though FEHA did not allow for a punitive damage recovery. See id. at 82, 276 Cal.Rptr. 130, 801 P.2d 373. Even closer to the point, in Hentzel the court held that wrongful termination actions under § 6310 are not limited to statutorily-identified remedies. See Hentzel, 138 Cal.App.3d at 301-03, 188 Cal. Rptr. 159 (holding that § 6310's remedies were not intended to be exclusive); see also Daly v. Exxon Corp., 55 Cal.App.4th 39, 45, 63 Cal.Rptr.2d 727 (1997) ("Had Exxon fired, discharged, or terminated Daly before the contract expired because she complained about unsafe working conditions, she could have sued for wrongful discharge in addition to statutory damages.") (citations omitted).
 
 
 24
 Nycomed contends that these cases are undermined by Moorpark, in which the California Supreme Court stated that "when the constitutional provision or statute articulating a public policy also includes certain substantive limitations in scope or remedy, these limitations also circumscribe the common law wrongful discharge cause of action. Stated another way, the common law cause of action cannot be broader than the constitutional provision or statute on which it depends...." Moorpark, 18 Cal.4th at 1159, 77 Cal. Rptr.2d 445, 959 P.2d 752. Seizing upon this language, Nycomed argues that Freund's damages are limited to that provided by § 6310 — back pay and reinstatement. All other relief, argues Nycomed, including front pay, emotional damages, and punitive damages, must be overturned because it is not authorized explicitly by § 6310.
 
 
 25
 Nycomed's argument is unpersuasive. Moorpark does not refer to either Rojo or Hentzel in the two sentences of the decision relied on by Nycomed, and it is unlikely that the Moorpark Court intended to overturn those decisions by a casual turn of phrase. Second, both Rojo and Hentzel grounded their decisions in the maxim that "where a statutory remedy is provided for a preexisting common law right, the newer remedy is generally considered to be cumulative, and the older remedy may be pursued at the plaintiff's election." Rojo, 52 Cal.3d at 79, 276 Cal. Rptr. 130, 801 P.2d 373 (citations omitted). Moorpark never took issue with this principle. The existence of an independent tort remedy for wrongful discharge based upon, but not limited by, § 6310 is too firmly established in California case law for us to accept Moorpark's two sentences as implicitly overturning that established law.
 
 Freund's Cross-Appeal
 
 26
 
 A. Judgment as a Matter of Law Overturning the Punitive Damages Award
 
 
 
 27
 Freund argues that the district court erred in granting Nycomed's post-trial motion for judgment as a matter of law with regard to punitive damages because Nycomed failed to move for such relief at the close of the evidence. We conclude that Freund is correct.[8]
 
 
 28
 Federal Rule of Civil Procedure 50(a) permits a party to move for judgment as a matter of law after the opposing party has been fully heard and prior to the submission of the case to the jury. Fed. R.Civ.P. 50(a). If such a motion made at the close of all the evidence is denied, Rule 50(b) allows the moving party to "renew" its motion within ten days after the court's entry of final judgment in the case. Fed. R.Civ.P. 50(b). A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion. See Advisory Comm. Notes to the 1991 Amendments, Fed.R.Civ.P. 50 ("A post trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion."); Murphy v. City of Long Beach, 914 F.2d 183, 186 (9th Cir. 1990) ("[Judgment notwithstanding the verdict] is improper if based upon grounds not alleged in a directed verdict [motion]."). The purpose of this rule is twofold. First it preserves the sufficiency of the evidence as a question of law, allowing the district court to review its initial denial of judgment as a matter of law instead of forcing it to "engage in an impermissible reexamination of facts found by the jury." Lifshitz v. Walter Drake & Sons, 806 F.2d 1426, 1428-29 (9th Cir.1986). Second, it calls to the court's and the parties' attention any alleged deficiencies in the evidence at a time when the opposing party still has an opportunity to correct them. See id. at 1429.
 
 
 29
 The district court's judgment as a matter of law defeated both of these purposes. The judgment was granted on the ground that there had been insufficient evidence of malice on the part of Nycomed's managing agents. That ruling necessarily redetermined a fact found by the jury. And because there had been no motion for judgment as a matter of law at the close of the evidence, Freund was deprived of the opportunity to introduce further evidence to remedy any deficiencies in its showing of malice. The judgment as a matter of law therefore violated Rule 50 and must be reversed.
 
 
 30
 The district court recognized that Nycomed had not raised insufficiency of evidence of malice in its Rule 50(a) motion at the close of the evidence, and that Rule 50 would normally preclude Nycomed from raising it after judgment. It noted, however, that under California law the appealability of punitive damage awards is not waivable. See Adams v. Murakami, 54 Cal.3d 105, 115 n. 5, 284 Cal.Rptr. 318, 813 P.2d 1348, 1354 n. 5 (1991). The district court accordingly entertained Nycomed's challenge and granted its motion.
 
 
 31
 We conclude that the district court erred in permitting California law to trump Federal Rule 50. Under the rule of Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), "federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996).
 
 
 32
 A special case arises when the federal law is embodied in a Federal Rule of Civil Procedure. In that situation, the federal rule must be applied if it does not "abridge, enlarge, or modify any substantive right" in violation of the Rules Enabling Act. See 28 U.S.C. § 2072; see also Hanna v. Plumer, 380 U.S. 460, 471, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).
 
 
 33
 The California rule that collides with Federal Rule 50 in this case is not a substantive rule that would be modified by the application of the federal rule. The no-waiver rule set forth by the California Supreme Court in Adams does not in itself create any substantive right. It does not add, subtract, or define any of the elements necessary to justify punitive damages; it merely establishes when and how those pre-existing substantive rules can be reviewed. Thus, in overriding the California no-waiver rule, Federal Rule 50 does not run afoul of the Rules Enabling Act, because its application "affects only the process of enforcing litigants' rights and not the rights themselves." Burlington N.R. Co. v. Woods, 480 U.S. 1, 8, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987); see also Donovan v. Penn Shipping Co., 429 U.S. 648, 649-50, 97 S.Ct. 835, 51 L.Ed.2d 112 (1977) (question whether acceptance of remittitur waives right to appeal is question of federal, not state law, involving "the proper role of the trial and appellate courts in the federal system"); Neifeld v. Steinberg, 438 F.2d 423, 426 (3d Cir.1971) (federal law determines whether assertion of counterclaim waives challenges to personal jurisdiction).[9] Rule 50 accordingly governs.
 
 
 34
 It is true that California's rule has its roots in the State's public policy. In setting forth the rule in Adams, the California Supreme Court stated that "the primary interest that must be protected is the public interest in punitive damage awards in appropriate amounts. We cannot allow the public interest to be thwarted by a defendant's oversight or trial tactics." 54 Cal.3d at 115 n. 5, 284 Cal.Rptr. 318, 813 P.2d at 1354 n. 5 (emphasis in original). But procedural rules commonly have a basis in public policy. A state standard of review, for example, doubtless reflects state policy concerns about the desirability of appellate oversight for particular issues. Yet it is well established that rules regarding the appropriate standard of review, or even the availability of review at all, to be applied by a federal court sitting in diversity, are questions of federal law. See, e.g., Browning-Ferris Indus. v. Kelco Disposal, Inc., 492 U.S. 257, 278-79, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989); Othman v. Globe Indemnity Co., 759 F.2d 1458, 1463 (9th Cir.1985) (applying, as a court sitting in diversity, a federal standard of review to a directed verdict motion); Felder v. United States, 543 F.2d 657, 664 (9th Cir.1976) (applying federal law to review an award of damages made pursuant to state law). Thus the mere fact that California's no-waiver rule concerning punitive damages is rooted in public policy does not render it substantive for purposes of our analysis. See Hanna, 380 U.S. at 468 n. 9, 85 S.Ct. 1136 (importance of rule to State is relevant only to determine whether refusal to apply rule would encourage forum-shopping or unfairly discriminate against State's citizens). We adhere, therefore, to our conclusion that California's rule is procedural and must yield to Federal Rule 50. The district court therefore erred in ruling that Nycomed could raise the issue of requisite malice in its post-trial Rule 50(b) motion.[10]
 
 
 35
 
 B. Excessiveness of Punitive Damages Award Because of Lack of Proper Evidence of Defendants' Financial Condition
 
 
 
 36
 Nycomed also challenges the punitive damage award as excessive on the ground that Freund failed to submit appropriate evidence regarding the defendants' financial condition.[11] Nycomed first invokes Tomaselli v. Transamerica Ins. Co., 25 Cal.App.4th 1269, 31 Cal.Rptr.2d 433 (1994), and argues that the jury improperly relied on evidence of the net worth of Nycomed Amersham, the parent company of Medi-Physics, Inc., even though Freund was an employee of Medi-Physics. See id. at 1283, 31 Cal.Rptr.2d 433 (finding it improper to consider evidence of the financial condition of a parent company where the parent was neither a named defendant nor the entity committing misconduct). Here, the jury appropriately considered evidence relating to Nycomed Amersham rather than to Medi-Physics. Nycomed Amersham was named as a defendant from the beginning of the litigation, and the officers whom the jury found acted with malice, De Veau and Vinci, were employees of Nycomed, not Medi-Physics.
 
 
 37
 Nycomed's second argument, which it raised for the first time at oral argument, is that the jury improperly considered evidence concerning the financial condition of the British Nycomed Amersham rather than the Delaware Nycomed Amersham. At oral argument, counsel pointed out that there are two corporate entities which use the name Nycomed Amersham: a parent company based in the United Kingdom and a subsidiary based in Delaware. Counsel asserted that, although the Delaware Nycomed is the defendant in the case, the jury heard evidence only about the net worth of the British entity. Because the British entity is neither a defendant nor the entity that committed misconduct, Nycomed contends that the evidence presented to the jury cannot provide the basis for a punitive damage award. We reject this contention.
 
 
 38
 First, Nycomed failed to clarify any misunderstanding caused by the introduction of evidence concerning the British Nycomed. The only party at the punitive damages hearing that was in a position to rectify the understandable confusion resulting from the existence of two different companies sharing an identical name was Nycomed, yet it never objected to the introduction of the evidence that it now claims is improper. Therefore, there was no reason for anyone at the proceeding to question the validity of the evidence.
 
 
 39
 In any event, there was enough evidence in the record concerning the financial condition of the Delaware Nycomed to support the jury's punitive damage award. A financial statement introduced at the hearing on punitive damages indicated that Nycomed's North American operations, of which the Delaware Nycomed presumably comprised a substantial part, had an operating profit of $158,000,000. That amount is sufficient to support a punitive damage award of $1,150,000.[12]
 
 
 C. Denial of Motion for New Trial
 
 
 40
 In its post-trial motions, Nycomed requested the district court to order a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure.[13] Nycomed's motion urged a new trial on two grounds that it had also urged in support of its motion for judgment as a matter of law: (1) insufficiency of evidence of malice, and (2) insufficiency of evidence of the financial condition of Nycomed. The district court denied the motion.[14] In so doing, the district court stated that "[b]ecause the Court has already vacated the punitive damages award, the Court need not address defendants' argument that a new trial should be granted on the ground that the punitive damages award was excessive." Nycomed argues that, having reversed the judgment as a matter of law, we should now remand so the district court can address the arguments for a new trial that it did not reach. We conclude that Nycomed's contention has merit.
 
 
 41
 The district court should not have declined to reach the motion for new trial on punitive damages on the ground that it had already granted judgment as a matter of law on that issue. Rule 50(c) of the Federal Rules of Civil Procedure requires a district court granting a judgment as a matter of law also to rule on whether to grant a new trial in the event the judgment as a matter of law is reversed on appeal. The efficiency of such a rule is apparent here; if the district court had entered such a ruling, we could review it as part of this appeal.
 
 
 42
 When a district court fails to enter a Rule 50(c) conditional order on a new trial motion, "we have discretion to either remand to the district court to let it decide the new trial motion or to decide the new trial motion ourselves." Acosta v. City and County of San Francisco, 83 F.3d 1143, 1149 (9th Cir.1996); see also Gordon Mailloux Enters., Inc. v. Firemen's Ins. Co., 366 F.2d 740, 741-42 (9th Cir.1966). In the present case, we exercise our discretion to remand so that the district court can address the motion in the first instance. The district court is most familiar with the context of the trial, and enjoys broad discretion with regard to a new trial motion. See Murphy, 914 F.2d at 186. We elect not to exercise that discretion for the district court.
 
 
 43
 We reject Freund's contention that Nycomed has waived its right to a new trial motion. Unlike a motion for judgment as a matter of law, a motion for new trial does not have to be preceded by a Rule 50(a) motion prior to submission of the case to the jury. See Williams v. Fenix & Scisson, Inc., 608 F.2d 1205, 1207 (9th Cir.1979) (holding that failure to move for directed verdict nullifies a motion for judgment notwithstanding the verdict, but leaves open for review a motion for new trial); see also Farley Transp. Co. v. Santa Fe Transp. Co., 786 F.2d 1342, 1347 (9th Cir.1985); Gilchrist v. Jim Slemons Imports, Inc., 803 F.2d 1488, 1493 (9th Cir. 1986).[15]
 
 
 44
 We also reject Freund's contention that Nycomed waived its right to a new trial by not drawing the district court's attention to its failure to make a conditional ruling as required by Rule 50(c). Freund relies on Arenson v. Southern Univ. Law Ctr., 43 F.3d 194, 197, clarified, 53 F.3d 80 (5th Cir.1995), which held that a litigant who fails to secure a Rule 50(c) conditional ruling in the district court loses the right to a new trial if the judgment as a matter of law is reversed. With all due respect to our sister circuit, we decline to follow its rule. Our decisions in Acosta and Gordon Mailloux suggested no such limitation on our discretion to remand for the district court to address a motion for new trial after failing to make a conditional ruling under Rule 50(c). Moreover, in the present case the district court actually did enter an order denying new trial; it was only in a footnote to its decision that the court indicated that it had found it unnecessary to address the new trial contentions because of its decision to grant judgment as a matter of law. Nycomed appealed from the order denying a new trial and raised the issue at the first appropriate point in its appellate briefs. We conclude that there was no waiver, and we accordingly remand the matter to the district court so that it may address a renewed motion for new trial on punitive damages.
 
 
 D. Denial of Attorneys' Fees
 
 
 45
 Freund argues that the district court erred by not awarding him attorneys' fees pursuant to Cal. Labor Code § 2802. Nycomed argues that § 2802 is an indemnification statute that does not apply to this case. We agree with Nycomed.
 
 
 46
 California Labor Code § 2802 states that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties...." Cal. Labor Code § 2802(a). The statute defines "necessary expenditures" to include "attorney's fees incurred by the employee enforcing the rights granted by this section." Cal. Labor Code § 2802(c).
 
 
 47
 Section 2802 does not authorize Freund to receive attorney's fees. As the language of the statute makes clear, § 2802 is designed to indemnify employees for their legal defense costs when they are sued for actions arising out of their employment. See, e.g., Devereaux v. Latham & Watkins, 32 Cal.App.4th 1571, 1583, 38 Cal.Rptr.2d 849 (1995); Jacobus v. Krambo Corp., 78 Cal.App.4th 1096, 1100, 93 Cal.Rptr.2d 425 (2000). It does not require an employer to pay the fees to support an employee's affirmative litigation against the employer. Indeed, Freund does not cite a single case in which the court interpreted § 2802 to authorize attorneys' fees in this context.[16] We affirm the district court's denial of attorneys' fees under § 2802.
 
 Conclusion
 
 48
 The district court's judgment awarding compensatory damages is affirmed. Its order setting aside punitive damages is reversed and the matter is remanded for the district court to address a renewed motion by Nycomed for a new trial on the issue of punitive damages. The district court's denial of attorneys' fees for Freund under § 2082 is affirmed.
 
 
 49
 The parties will bear their own costs on appeal.
 
 
 50
 No. 01-56491 (Main appeal): AFFIRMED.
 
 
 51
 No. 01-56494 (Cross-appeal): AFFIRMED in part; REVERSED in part; REMANDED.
 
 
 
 Notes:
 
 
 [1]
 The defendants against whom judgment was entered were Nycomed Amersham, Amersham Holdings, Inc., Nycomed Amersham Imaging, a division of Nycomed Amersham, and Amersham/Medi-Physics, Inc., a division of Nycomed Amersham. Unless the context indicates to the contrary, "Nycomed" is used hereinafter to refer to the defendants collectively
 
 
 [2]
 Freund also cross-appeals the district court's denial of Freund's claim for attorneys' fees. We affirm the district court's denial of fees
 
 
 [3]
 Nycomed's nuclear pharmacy specialized in preparing and providing radiopharmaceuticals for use in hospitals and clinics
 
 
 [4]
 The complaint was originally filed in California Superior Court, but Nycomed, a Delaware-based corporation, removed the case to federal court on the basis of diversity of citizenshipSee 28 U.S.C. §§ 1332 and 1441(a).
 
 
 [5]
 The text of § 6310, in pertinent part, states that
 No person shall discharge or in any manner discriminate against any employee because the employee has ... [m]ade any oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative.
 Cal. Labor Code § 6310(a)(1).
 
 
 [6]
 This Court has also citedHentzel with approval on several occasions. See, e.g., Skillsky v. Lucky Stores, Inc., 893 F.2d 1088, 1093-94 (9th Cir.1990); Paige v. Henry J. Kaiser Co., 826 F.2d 857, 863 (9th Cir.1987).
 
 
 [7]
 Because the California precedent is clear, we deny Nycomed's request that we certify to the California Supreme Court the question whether violation of § 6310 can support a claim for wrongful discharge in violation of public policySee Cal. Sup.Ct. R. 29.5 (stating that certification is appropriate only if "the decisions of the California appellate courts provide no controlling precedent concerning the certified question").
 
 
 [8]
 We review the district court's grant of judgment as a matter of law under the same standard used by the district court to evaluate the original motionSee Air-Sea Forwarders v. Air Asia Co., Ltd., 880 F.2d 176, 181 (9th Cir.1989).
 
 
 [9]
 To the extent that our conclusion may be inconsistent withSimmons v. City of Philadelphia, 947 F.2d 1042, 1085-86 (3d Cir.1991), we respectfully decline to follow Simmons. Simmons held that a state rule against waiver of governmental immunity was substantive because it could affect the outcome on appeal, and it thus could not be overridden by Federal Rule 50. See id. at 1085-86. The fact that a procedural rule may affect the outcome of an appeal does not make the rule substantive; most procedural rules may affect outcome, but they remain procedural because they govern the process of litigation and would not affect choice of forum or create inequity. See Hanna, 380 U.S. at 468-69, 85 S.Ct. 1136.
 
 
 [10]
 Contrary to the view stated by the dissent herein, our decision does not run afoul ofHonda Motor Co. v. Oberg, 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994). Honda held unconstitutional an Oregon statute that prohibited courts from reviewing excessiveness of punitive damages unless there was no evidence at all to support the verdict. See id. at 418, 426-27, 114 S.Ct. 2331. Reviewability of excessiveness of the award was conceded by the parties here and we addressed the only claim of excessiveness raised by Nycomed. Our decision that Nycomed could not challenge the punitive damages award for lack of evidence of malice is not a categorical prohibition of such review, of the type prohibited by Honda Motor Co. We merely hold that Rule 50 governs the means of securing such post-verdict review. To the extent that the right to such review is protected by the Constitution, it may be waived or forfeited like many other constitutional rights by failing to follow the requisite procedure. Here, the right to challenge the punitive damages award for lack of evidence of malice was lost because that challenge could have been raised prior to verdict in a Rule 50(a) motion and it was not.
 
 
 [11]
 Although Nycomed did not make a Rule 50 motion with respect to the evidence of financial condition, the parties concede that Rule 50 does not bar its excessiveness claim. We accept this concession, and do not otherwise rule on the point. Contrary to the suggestion in footnote 7 of the dissent herein, our acceptance of this concession does not reveal any inadequacy in the theory on which we hold Rule 50 to bar Nycomed's challenge to the jury's finding of malice. Any deficiency in evidence of malice should be apparent at the close of evidence, and should be the subject of a pre-verdict Rule 50(a) motion. The excessiveness of theamount of the jury's award of punitive damages cannot be known prior to verdict, however, and thus cannot be made the subject of a Rule 50(a) motion. There is accordingly no inconsistency in our theory when we treat malice and excessiveness of amount differently.
 
 
 [12]
 California's non-waivable review of punitive damages also includes consideration of the relative size of the punitive award in relation to that of the compensatory awardSee Neal v. Farmers Ins. Exchange, 21 Cal.3d 910, 928, 148 Cal.Rptr. 389, 582 P.2d 980, 990 (1978). That is an issue that would be impossible to raise in a Rule 50(a) motion made before the jury had decided anything. Nycomed does not challenge the size of the punitive award in relation to the compensatory award, however.
 
 
 [13]
 The decision to grant a new trial is committed almost entirely to the trial judge's discretionSee Murphy, 914 F.2d at 186 (quoting Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980)). A district court's denial of a motion for a new trial after consideration of all the evidence is "virtually unassailable" and is subject to reversal only if there is a complete absence of evidence supporting the jury's verdict. Saman v. Robbins, 173 F.3d 1150, 1154 n. 4 (9th Cir.1999) (quoting Pulla v. Amoco Oil Co., 72 F.3d 648, 656-57 (8th Cir.1995)).
 
 
 [14]
 The district court also refused conditionally to grant a new trial unless Freund accepted a reduced award of damages
 
 
 [15]
 We do not regardJanes v. Wal-Mart Stores Inc., 279 F.3d 883 (9th Cir.2002), as casting any doubt on this proposition. In Janes, the defendant argued that it was entitled to a new trial because the evidence established as a matter of law that it had good cause to terminate the plaintiff's employment. Janes held that the failure to make a timely Rule 50(a) motion foreclosed that contention. Id. at 888. Janes cited both Gilchrist and Farley, which it was bound to follow, without casting any doubt on the holding of those cases that a motion for new trial is not foreclosed by failure to make an earlier Rule 50(a) motion.
 
 
 [16]
 The lone case relied on by Freund,O'Hara v. Teamsters Union Local # 856, 151 F.3d 1152 (9th Cir.1998) does not support his position. There, an employer refused to indemnify an employee who was sued by a third party. Id. at 1156. The employee sued the employer to recover the costs of defending the lawsuit. Id. We ruled that the employer not only had to indemnify the employee for his legal defense in the original lawsuit, but also ruled that the employer had to pay the employee's attorneys' fees in his affirmative lawsuit to enforce the indemnification. Id. at 1162. In that case, however, the costs incurred by the employee in his affirmative lawsuit arose out of his effort to obtain indemnification rather than from his assertion of an independent legal right. Id. at 1161. In the present case, Freund's legal fees are entirely unrelated to indemnification. Furthermore, it should be noted that O'Hara's ruling that § 2082 authorized fees for the enforcement litigation against the employer has been expressly disapproved by at least one subsequent California appellate court decision. See Jacobus, 78 Cal.App.4th at 1106, 93 Cal. Rptr.2d 425.
 
 
 GOULD, Circuit Judge, dissenting in part:
 
 52
 "[A] primary interest that must be protected is the public interest in punitive damage awards in appropriate amounts. We cannot allow the public interest to be thwarted by a defendant's oversight or trial tactics." Adams v. Murakami, 54 Cal.3d 105, 284 Cal.Rptr. 318, 813 P.2d 1348, 1354 n. 5 (1991) (emphasis in the original).
 
 
 53
 "A decision to punish a tortfeasor by means of an exaction of exemplary damages is an exercise of state power that must comply with the Due Process Clause of the Fourteenth Amendment. The commonlaw practice, ... the strong presumption favoring judicial review that we have applied in other areas of the law, and elementary justice all support the conclusion that such a decision should not be committed to the unreviewable discretion of the jury." Honda v. Oberg, 512 U.S. 415, 434-35, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994).
 
 
 54
 The majority reverses the district court's order overturning as a matter of law punitive damages awarded to Freund. These punitive damages, in my view, were correctly stricken by the district court on post-verdict motion because of lack of evidence of malice. The majority errs in reinstating these punitive damages even though subject to the district court's decision on remand about new trial on punitive damages.[1]
 
 
 55
 The majority's decision is based on the requirement of Rule 50(b) of the Federal Rules of Civil Procedure that a motion for post-trial relief must state the same grounds for relief as the litigant's Fed. R.Civ.P. 50(a) directed verdict motion.[2] In so doing, my colleagues expand the scope of a federal court's power in a diversity action beyond permissible bounds, produce a result that is contrary to both Adams and the Due Process Clause of the Fourteenth Amendment, and create a circuit split in the process. See Simmons v. City of Philadelphia, 947 F.2d 1042, 1085-1087 (3d Cir.1991) (Becker, J.) (applying Pennsylvania substantive rule preventing waiver of municipalities' sovereign immunity and allowing municipality to raise sovereign immunity in 50(b) motion notwithstanding failure of municipality to raise immunity in 50(a) motion).
 
 
 56
 I agree with the majority that Freund's compensatory damage award against Nycomed Amersham ("Nycomed") should be upheld. I also agree with the majority that federal waiver precepts under the literal terms of Rule 50 conflict with California law, preventing waiver of post-verdict judicial review of punitive damages. However, I respectfully dissent from the majority's apparent view that California's rule preventing waiver of post-verdict judicial review of punitive damages, and the Fourteenth Amendment's Due Process protection requiring meaningful post-verdict judicial review of punitive damage awards, succumb to Rule 50's waiver requirement. In my view, the substantive interests of California and the protections of Due Process require that we sustain the district court's post-verdict rejection of punitive damages that were inconsistent with California law, despite the apparent conflict with Rule 50, because there is no evidence that Nycomed acted with malice.
 
 
 57
 * The complexities of choice-of-law rules in Federal diversity actions took an important turn in Erie R.R. v. Tompkins, which overturned Swift v. Tyson, 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842), and held that federal courts sitting in diversity must apply state law to resolve substantive issues, but apply federal law to resolve procedural issues. Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
 
 
 58
 Erie established the basis for the result in Ragan v. Merch. Transfer & Warehouse Co. 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), a case applying the Erie doctrine to the Federal Rules of Civil Procedure. In Ragan, the plaintiff filed a complaint in federal court on September 4, 1945, arising from an accident that occurred on October 1, 1943, and served the defendant on December 28, 1945, notwithstanding a Kansas statute which provided:
 
 
 59
 "An action shall be deemed commenced within the meaning of [the statute of limitations], as to each defendant, at the date of the summons which is served on him.... An attempt to commence an action shall be deemed equivalent to the commencement thereof within the meaning of this article when the party faithfully, properly and diligently endeavors to procure a service; but such attempt must be followed by the first publication or service of the summons within sixty days." Ragan, 337 U.S. at 531 n. 4, 69 S.Ct. 1233 (quoting Kan. Gen.Stat. § 60-308 (1935)).
 
 
 60
 The defendant moved for summary judgment on the ground that service had not been made within either the 2-year limitations period[3] or the 60-day period for service after filing required by Kansas law. Id. at 531, 69 S.Ct. 1233. The plaintiff defended on the ground that Rule 3 of the Federal Rules of Civil Procedure provided that an action in federal court commenced upon the filing of the complaint in federal court. Id. at 531, 69 S.Ct. 1233. Despite Rule 3, the Supreme Court dismissed the action, relying on the Erie doctrine and concluding that a cause of action could not have a "longer life in the federal court than it would have had in the state court," and that the state service of summons statute controlled because it was an integral part of the state statute of limitations. Id. at 533-34, 69 S.Ct. 1233.
 
 
 61
 Ragan was not the last word on the interplay between the Federal Rules of Civil Procedure and state law in diversity actions. In Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Supreme Court clarified the Erie doctrine's application to the Federal Rules of Civil Procedure. The Supreme Court held that the first inquiry was whether the Federal Rule of Civil Procedure is "sufficiently broad" that it creates a "direct collision" with state law, thereby leaving no room for the operation of that law. Hanna, 380 U.S. at 471-472, 85 S.Ct. 1136; see also Burlington N. R.R. Co. v. Woods, 480 U.S. 1, 5, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987) (explaining Hanna). If the Federal Rule of Civil Procedure is applicable, then it applies regardless of any contravening state law, so long as the Federal Rule complies with the requirements of both the Rules Enabling Act and the Constitution. Hanna, 380 U.S. at 471, 85 S.Ct. 1136 ("[T]he court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions."); see also Gasperini v. Ctr. for the Humanities, 518 U.S. 415, 428 n. 7, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) ("Concerning matters covered by the Federal Rules of Civil Procedure, the characterization question is usually unproblematic: It is settled that if the Rule in point is consonant with the Rules Enabling Act, 28 U.S.C. § 2802, and the Constitution, the Federal Rule applies regardless of contrary state law."); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003) ("In other words, if a Federal Rule of Civil Procedure is valid under the Constitution and the Enabling Act, it applies according to its terms in all civil cases in federal district court.").
 
 
 62
 Because the application of Rule 50 here to deny a defendant post-verdict judicial review of a punitive damages award would exceed the scope of the authority granted to the courts under the Rules Enabling Act and would be contrary to the Constitution, I conclude that we must allow post-verdict judicial review of punitive damages.
 
 II
 
 63
 Although as yet no Federal Rule of Civil Procedure has been wholly invalidated because of the Enabling Act or the Constitution,[4] rules including Rule 50 have been narrowed by federal courts to avoid abridging substantive rights. See Ragan, 337 U.S. at 533, 69 S.Ct. 1233 (narrowing Rule 3); Walker v. Armco Steel Corp., 446 U.S. 740, 750-51, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980) (narrowing Rule 3); Simmons, 947 F.2d at 1085-86 (narrowing Rule 50 to avoid abridging state rule against waiver of governmental immunity).[5] Here, if Rule 50 is to be limited to its intended procedural scope, and not to supplant substantive California Law and Constitutional protection under the Due Process Clause, it must be narrowed.
 
 
 64
 * The Rules Enabling Act authorizes the adoption of the Federal Rules of Civil Procedure, but provides that "[s]uch rules shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2802(b). The majority's application of Rule 50 frustrates a substantive right granted by California law because it permits punitive damages to stand without post-verdict judicial review of the validity of the punitive damages award. Rule 50's application in this case must be restricted to comply with the California Supreme Court's rule in Adams v. Murakami ("Adams rule").
 
 
 65
 In my view, the Adams rule reflects a substantive policy decision of California to require meaningful judicial review before a defendant is subjected to punitive damages. Under California substantive law governing punitive damages, the public interest must be recognized and assessed before California courts may permit an award punitive damages to stand. Stated another way, California does not allow punitive damages except when and to the extent that the punitive damage award promotes the public interest. Viewed in this light, the Adams rule is not a mere rule of procedure, as the majority incorrectly characterizes it. The Adams rule does not make the litigation process more efficient, more accurate, or serve any procedural function that would favor applying Rule 50 in place of the Adams rule.[6] As the California Supreme Court in Adams made clear, the reasoning for the rule is based upon the "public interest in punitive damage awards in appropriate amounts." Adams, 284 Cal.Rptr. 318, 813 P.2d at 1354 n. 5. The Adams rule gives defendants a non-waivable right to judicial review of a punitive damages award post-verdict.
 
 
 66
 The majority's view of Rule 50 abridges this California substantive right because it precludes defendants from obtaining judicial review of a punitive damages award if they do not anticipate an improper punitive damages award pre-verdict and raise the objection by a Rule 50(a) motion. The majority's decision to adhere to Rule 50 violates fundamental limitations of the Supreme Court's rulemaking power as delineated by the Rules Enabling Act because the majority abridges a substantive right of a defendant to be protected against an improper punitive damages award. In enacting the Rules Enabling Act, Congress made clear that it did not authorize the Supreme Court to modify substantive policies such as the California substantive policy that punitive damages be permitted only when they serve the public interest. Because application of Rule 50 would transgress the authority granted by Congress under the Rules Enabling Act, I would apply the Adams rule requiring post-verdict judicial review of a punitive damages award.
 
 B
 
 67
 The Due Process Clause of the Fourteenth Amendment, which requires meaningful post-verdict judicial review of punitive damage awards fashioned by a jury, also dictates against applying the terms of Rule 50 in this case. Honda, 512 U.S. at 434-35, 114 S.Ct. 2331.[7] The wise principle that courts should not allow the imposition of excessive or arbitrary exemplary damage awards is long established; this principle predated our Constitution and still recurs in current times. Fabrigas v. Mostyn, 2 Bl.W. 928, 96 Eng. Rep. 549 (K.B.1774) ("Some [awards] may be so monstrous and excessive, as to be in themselves an evidence of passion or partiality in the jury"); Day v. Woodworth, 54 U.S. (13 How.) 363, 371, 14 L.Ed. 181 (1851) (exemplary, punitive or vindictive damages should reflect the "enormity of [the] offence"); Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal Inc. 492 U.S. 257, 293, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (O'Connor, J., concurring in part and dissenting in part) ("Chapter 20 of Magna Carta, 9 Hen. III, ch. 14 (1225), prohibited amercements that were disproportionate to the offense or that would deprive the wrongdoer of his means of livelihood: `A Free-man shall not be amerced for a small fault, but after the manner of the fault; and for a great fault after the greatness thereof.'"); Honda, 512 U.S. at 434, 114 S.Ct. 2331 (due process dictates that a defendant cannot be subjected to exemplary damages absent post-verdict judicial review); BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 587, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (Breyer, J., concurring) ("This constitutional concern, itself harkening back to the Magna Carta, arises out of the basic unfairness of depriving citizens of life, liberty, or property, through the application, not of law and legal process, but of arbitrary coercion."); Ciraolo v. City of New York, 216 F.3d 236, 245 (2d Cir.2000) (Calabresi, J., concurring) ("Although widely accepted by economists and acknowledged by some courts, the multiplier function of punitive damages has nonetheless been applied haphazardly at best. One reason this is so is that the twin goals of deterrence and retribution are often conflated, rather than recognized as analytically distinct objectives."); State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) ("The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor.") (emphasis added). Though each of these cases might be distinguished in some way, a general principle favoring judicial review of punitive damages runs through these cases and should illuminate our judgment.[8]
 
 
 68
 As Adams recognized, based on the Supreme Court's reasoning in Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), there is "a constitutional mandate for meaningful judicial scrutiny of punitive damages awards." Adams, 284 Cal.Rptr. 318, 813 P.2d at 1356. In Haslip, the Court held that Alabama's system of jury instructions and judicial review that governed an award of punitive damages protected a civil defendant's due process interests. Id. at 20-24, 111 S.Ct. 1032. The Supreme Court also made it clear that Alabama's system for reviewing punitive damage awards satisfied due process because it provided a "definite and meaningful constraint" on a jury's discretion to award punitive damages by allowing post-verdict review procedures. Id. at 22, 111 S.Ct. 1032. This constitutional mandate requiring meaningful judicial scrutiny of punitive damages post jury-verdict was further clarified in Honda Motor Co. v. Oberg. In Honda, the Supreme Court specifically held that Oregon's system for awarding punitive damages violated procedural Due Process because it did not permit meaningful post-verdict review of jury verdicts that included punitive damages. 512 U.S. at 434-35, 114 S.Ct. 2331. More importantly, the Court made clear that post-verdict review of punitive damage awards is the most important procedural safeguard on punitive damage awards and held that the lack of meaningful review of jury verdicts violates the Due Process Clause of the Fourteenth Amendment. Id. at 435, 114 S.Ct. 2331; see also White v. Ford Motor Co., 312 F.3d 998, 1025 (9th Cir.2002) ("Read together Haslip and Honda teach that ... it is the availability of post-verdict review of punitive damages that provides the most substantial procedural check on punitive damages.") (Graber, J., concurring in part and dissenting in part). The Due Process guarantee mandating post-verdict judicial review of punitive damages provides an additional reason against the application of Rule 50 in this case.
 
 III
 
 69
 The Supreme Court made clear in Hanna that its decision did not purport to abridge either the Rules Enabling Act or the guarantees of the Constitution. Hanna, 380 U.S. at 473-74, 85 S.Ct. 1136. Notwithstanding the explicit language of Hanna, the majority concludes that what I consider to be a substantive right in California and a federal constitutional guarantee relating to a court's ability to check punitive damage awards of the jury post-verdict cannot even be considered because of Rule 50, on the theory that the Rule "affects only the process of enforcing litigants' rights and not the rights themselves." Ibid. at 762 (internal quotation marks omitted). This incorrect majority view of Rule 50 jettisons the California substantive law requirement that punitive damages must advance public interest and violates the related federal Due Process requirement that courts must be permitted to conduct post-verdict review of punitive damages awards. The procedural nature of Rule 50 is inadequate support for this transgression of state substantive law and federal Due Process. It is untenable to conclude that established California precedent and a Fourteenth Amendment Due Process right allowing judicial review of punitive damage awards following a jury verdict must be subordinate to Rule 50.
 
 
 70
 I respectfully dissent.
 
 
 
 Notes:
 
 
 [1]
 The majority's reversal of the district court's order overturning such punitive damages in this case is error, even if on remand the district court decides to grant a new trial on punitive damages. Because inadequate evidence of malice was presented in the first trial, the district court was correct to strike punitive damages and defendants in law deserve to be free of any risk that punitive damages be awarded in a new trial. One can only hope that the district court on remand will at least alleviate the error of the majority's decision by ordering a new trial on punitive damages
 
 
 [2]
 As the majority correctly states: "Federal Rule of Civil Procedure 50(a) permits a party to move for judgment as a matter of law after the opposing party has been fully heard and prior to the submission of the case to the jury. Fed.R.Civ.P. 50(a). If such a motion made at the close of all the evidence is denied, Rule 50(b) allows the moving party to `renew' its motion within ten days after the court's entry of final judgment in the case. Fed.R.Civ.P. 50(b)."supra at 758.
 
 
 [3]
 Kansas had a two-year statute of limitations for the tort claims at issue inRagan. Ragan, 337 U.S. at 531, 69 S.Ct. 1233 (citing Kan. Gen. Stats., § 60-306 (1935)).
 
 
 [4]
 That is not surprising because careful effort goes into the preparation and vetting of the Federal Rules, including review by the Judicial Conference and the United States Supreme Court, before they are enactedSee 28 U.S.C. § 2072, 2073.
 
 
 [5]
 Rule 3 has been criticized for its differing application in the state and federal contextSee Vess at 317 F.3d at 1103 ("The [Supreme] Court's different reading of Rule 3, depending on whether federal or state law is involved, has been heavily criticized"). This criticism is not relevant here because Rule 50 cannot be applied in either the state or federal context when it serves to deprive a defendant of their Fourteenth Amendment Right to post-verdict judicial review of a jury's punitive damages award. See Honda, 512 U.S. at 434, 114 S.Ct. 2331 (decision to punish tortfeasor by an "exaction of exemplary damages" violated Due Process Clause of Fourteenth Amendment when committed to the unreviewable discretion of a jury).
 
 
 [6]
 The majority should take pause from the fact that theAdams rule has far less of a procedural connection than the Kansas service of summons statute that conflicted with Rule 3 in Ragan.
 
 
 [7]
 The majority appears to conclude in error that we may here consider only if punitive damages were excessive in amount, and not if they were entirely improper. The majority explains that it conducts its limited review of "excessiveness" based on the parties' "concession" that Rule 50 does not bar an excessiveness claimIbid. at n. 10. But the majority's limited review on this issue is not wholly reconciled with its theory and interpretation of Rule 50, for the majority's reasoning would preclude even the excessiveness review that the majority permits based on "concession." Perhaps the concession should warn the majority that its Rule 50 theory is inadequate. But more importantly, the majority fails to recognize that in a sense any award of punitive damages is "excessive" when, as here, the record shows no malice or inadequate evidence of malice, to support punitive damages. And nothing could be more "arbitrary" than to permit punitive damages in any amount to stand absent evidence of malice that is required by state law for imposition of punitive damages. A defendant such as Nycomed, who acted without malice and who should not receive a punitive fine, must not be treated worse than a defendant who acted with malice and who deserves some punitive fine but in lesser amount.
 This position is supported by the Supreme Court's precedent. In its recent decision in State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), the Supreme Court explicitly held and explained:
 "[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct. We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect. It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." (internal quotation marks and citations omitted)
 Although BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), and Campbell were focused on Due Process problems involving excessive punitive damages when malice existed, the above language indicates that the same Due Process problems exist in a case, such as this one, where punitive damages are imposed on a defendant who did not act reprehensibly.
 
 
 [8]
 One is reminded of Lord Mansfield's observation: "The law does not consist in particular cases, but in general principles, which run through the cases, and govern the decision of them."Rust v. Cooper 2 Cowp. 629, 632, 98 Eng. Rep. 1277, 1279 (K.B.1777) (Mansfield, J.).