**SEUNGTAE KIM**

v.

**BMW FINANCIAL SERVICES NA, LLC, et al.**

**Case No. CV 14–01752–BRO (JCx)**

United States District Court, C.D. California.

Signed October 30, 2015

936

Robert F. Brennan, Law Offices of Robert F. Brennan APC, La Crescenta, CA, Stephanie R. Tatar, Tatar Law Firm APC, Burbank, CA, for Plaintiff.

Rebecca A. Caley, Caley and Associates, Brea, CA, for Defendants.

## ORDER DENYING DEFENDANT'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND A NEW TRIAL [169] [171]

BEVERLY REID O'CONNELL, United States District Judge

### I. INTRODUCTION

Before the Court are two motions filed by Defendant BMW Financial Services NA, LLC ("Defendant") following a jury verdict in Plaintiff Seungtae Kim's ("Plaintiff") favor. In the first, Defendant renews its Motion for Judgment as a Matter of Law ("RJMOL"), and asks the Court to enter judgment in its favor because, according to Defendant, a reasonable jury could not have found for Plaintiff on his Fair Credit Reporting Act ("FCRA") and California Identity Theft ("CIT") claims. (Dkt. No. 169.) The second motion seeks a new trial pursuant to Federal Rule of Civil Procedure 59 on the grounds that the jury's award of $430,000 in damages is excessive and based on insufficient evidence, and that the Court erroneously declined to give two jury instructions that Defendant proposed. (Dkt. No. 171.) After considering the papers filed in support of and in opposition to the instant Motion, the Court deems this matter appropriate for decision without oral argument of counsel. *See* Fed.R.Civ.P. 78; C.D. Cal. L.R. 7–15. For the following reasons, the Court **DENIES** Defendant's Motions.

### II. FACTUAL AND PROCEDURAL HISTORY

This case arose from Defendant's wrongful credit reporting regarding a car loan taken out in Plaintiff's name by Mike Kim, an individual Plaintiff claimed stole his identity. The case progressed to a jury trial that commenced on August 25, 2015. (J. After Jury Trial ("Judgment") at 1; Dkt. No. 159.) At trial, three of Plaintiff's four initial causes of action were at issue: (1) violation of the federal FCRA, under 15 U.S.C. § 1681 *et seq.*; (2) violation of the CIT, pursuant to California Civil Code section 1798 *et seq.*; and, (3) violation of the California Consumer Credit Reporting Agencies Act ("CCRAA"), according to California Civil Code section 1785.1 *et seq.* (Pl.'s Opp'n to Def.'s Renewed Mot. for J. as a Matter of Law ("Opp'n to RJMOL") at 1–2.) Plaintiff argued the car loan was executed without his knowledge or consent, and that Defendant failed to adequately respond to his reports of identity theft. Defendant countered that it complied with applicable law in responding to these reports and Plaintiff's credit disputes, and that Plaintiff authorized Mike Kim to use Plaintiff's personal identification to purchase the car.

After the jury began its deliberations, but before the jury rendered its verdict, Defendant moved for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(a), thereby preserving its right to renew the motion pursuant to Rule 50(b). *(See* Tr. of Trial Proceedings ("Transcript") at 675:22; Dkt. No. 178, Ex. 4.) The motion was based on two grounds: (1) that Plaintiff's CIT claim failed because the evidence "overwhelmingly showed" that Plaintiff signed a power of attorney form authorizing Mike Kim to purchase a 2007 BMW in Plaintiff's name; and, (2) with regard to the FCRA and CCRAA claims, Plaintiff failed to establish damages resulting from Defendant's reports because Plaintiff did not prove that Defendant actually reported the disputed loan after Defendant completed its investigation of Plaintiff's identity theft claim. (Transcript at 676:2–678:1.) The Court

denied Defendant's motion, concluding that, as to the first ground, there was sufficient disputed evidence for a jury to decide whether Plaintiff authorized Mike Kim to purchase the BMW in Plaintiff's name. (*Id.* at 680:15–20.) Regarding Defendant's second argument, the Court also determined that Plaintiff's testimony, which indicated that Defendant continued to report the disputed loan until mid–2014, was sufficient evidence to require a jury to decide whether Defendant reported the disputed loan after its investigation concluded. (*Id.* at 680:21–23.)

On August 28, 2015, the jury rendered its unanimous verdict, finding in Plaintiff's favor on two of his three claims. (Judgment at 1.) As to the CIT claim, the jury found that Plaintiff proved by a preponderance of the evidence that he was a victim of identity theft and that Defendant violated the CIT law. (Jury Verdict at 1–2, 6–7.) The jury assessed a civil penalty of $30,000 against Defendant—the maximum allowed under the CIT statute—and also awarded Plaintiff $150,000 in noneconomic damages. (Judgment at 1.) With respect to the FCRA claim, the jury concluded that Defendant damaged Plaintiff by failing to conduct a reasonable investigation of Plaintiff s dispute. (Jury Verdict at 2.) Specifically, the jury determined that Defendant negligently performed its investigation, but it determined that Defendant did not "willfully" violate the FCRA. (*Id.* at 3.) The jury ultimately awarded Plaintiff $250,000 for the injury to his reputation or creditworthiness caused by Defendant's negligent FCRA violation. (Judgment at 1.) As to the CCRAA claim, while the jury found that Defendant reported inaccurate or incomplete credit information about Plaintiff to one or more credit bureaus, thereby harming Plaintiff, it ultimately concluded that Defendant maintained reasonable procedures to comply with the CCRAA. (Jury Verdict at 4–5.) Accordingly, the jury found in Defendant's favor on the CCRAA claim and awarded no damages. (Judgment at 1.)

On October 1, 2015, Defendant filed a Renewed Motion for Judgment as a Matter of Law, (Dkt. No. 169), and a Motion for New Trial, (Dkt. No. 171). Plaintiff timely opposed[1] the motions on October 14, 2015, (Dkt.Nos.176, 177), and Defendant timely replied, (Dkt.Nos.193, 195).

## III. REQUESTS FOR JUDICIAL NOTICE

■ Under Federal Rule of Evidence 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). A court may properly take judicial notice of matters in the public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). Further, a court "shall take judicial notice if requested by a party and supplied with the necessary information." *See* Fed. R.Evid. 201(d); *Mullis v. U.S. Bankr.Ct. for Dist. of Nev.*, 828 F.2d 1385, 1388 (9th Cir.1987).

In its first Request, Defendant asks the Court to take judicial notice of various documents filed in or issued by this Court, and documents admitted as evidence during the trial that took place from August 25, 2015 to August 28, 2015. (First Req. for Judicial Notice ("1st RJN") ¶¶ 1–14, Exs. 1–14; Dkt. No. 170.)[2] Courts may take judicial notice of their own files and records under Rule 201.

---

**1.** Defendant filed its first Request for Judicial Notice two times. (*See* Dkt. Nos. 170, 172.)

**2.** Defendant filed its first Request for Judicial Notice two times. (*See* Dkt. Nos. 170, 172.)

*Gerritsen v. Warner Bros. Entertainment, Inc.*, No. CV 14–03305–MMM, 2015 WL 4069617, at *13 (C.D.Cal. Jan. 30, 2015); *see also United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.1992) (holding that courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"). Given that these documents were publicly filed with or by this Court in a directly related matter, the Court **GRANTS** Defendant's first request in its entirety. However, the Court only takes judicial notice of the existence of the documents, and the disputed contents are not deemed established. *See Lee*, 250 F.3d at 689 ("A court may take judicial notice of matters of public record.... But a court may not take judicial notice of a fact that is subject to reasonable dispute") (internal quotation marks omitted).

■ Defendant's second Request asks also the Court to take judicial notice of three documents filed in this Court or admitted during the underlying trial. (Second Req. for Judicial Notice ("2d RJN") ¶¶ 1–3, Exs. 1–3; Dkt. No. 196.)[3] For the reasons discussed above, and with the same limitation, the Court **GRANTS** Defendant's Request as to these documents. Defendant also requests that the Court take notice of verdict forms filed in *Drew v. Equifax*, No. C 07–0726–SI (N.D.Cal.2010); *Thomas v. Trans Union, LLC*, No. 00–1150–JE (D.Or.2002); and, *Miller v. Equifax*, No. CV 13–11–01231 (D.Or.2013). (2d RJN ¶¶ 4–6, Exs. 4–6.) Because these are publicly filed documents, the Court **GRANTS** Defendant's Request with respect to these forms.

**3.** Similar to Defendant's first Request for Judicial Notice, Defendant also filed the second Request twice. (See Dkt. Nos. 194, 196.)

## IV. RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant first seeks an order entering judgment as a matter of law in its favor pursuant to Rule 50(b). In bringing this motion, Defendant renews the Rule 50(a) motion it brought at the close of evidence. (*See* Transcript at 675:19.) For the reasons discussed below, Defendant's Motion is **DENIED.**

### A. Legal Standard

■ Under the Federal Rules of Civil Procedure, a Rule 50(b) motion for judgment as a matter of law is not a freestanding motion, but rather is a renewed Rule 50(a) motion. *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). To move under Rule 50(a) for judgment as matter of law, a party must bring the motion before the case is submitted to the jury. *Id.* Only after the court has denied or deferred ruling on a Rule 50(a) motion, and a jury subsequently returns a verdict against the moving party, may that party renew its motion by moving under Rule 50(b). *Id.* A party cannot "raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir.2003) (citing Fed. R. Civ. P. 50 advisory committee's notes to the 1991 amendments ("A post trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion.")); *accord* Fed. R. Civ. P. 50 advisory committee's notes to the 2006 amendments ("Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the pre-verdict motion.").

■ In ruling on a Rule 50 motion, a court must not make credibility determina-

tions or weigh the evidence, and it should draw all inferences in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir.2006). The Court also "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151, 120 S.Ct. 2097. Moreover, the Court is to give deference to the jury's credibility findings consistent with the verdict, *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1468 n. 8 (9th Cir.1984)—it "may not substitute its view of the evidence for that of the jury," *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir.2001). Applying these principles, the Court must then determine whether the evidence permits only one reasonable conclusion and whether that conclusion is contrary to the verdict rendered by the jury. *Josephs*, 443 F.3d at 1062.

▆▆▆ Further, a court must uphold a jury's verdict if it is supported by "substantial evidence." *S.E.C. v. Todd*, 642 F.3d 1207, 1215 (9th Cir.2011). "Substantial evidence" is evidence sufficient to support the jury's conclusion, "even if it is also possible to draw contrary a conclusion from the same evidence." *Id.* (quoting *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir.2007)).

## B. Discussion

At trial, Defendant premised its Rule 50(a) motion on two grounds. The first argument specifically addressed Plaintiff's CIT claim and contended that Plaintiff did not "meet [his] burden of proof to prove identity theft," (Transcript at 676:16–17), because there was "a document bearing . . . [Plaintiff's] signature authorizing Mike

Kim to buy a vehicle for him," (Transcript at 676:13–15). Defendant's second argument referenced only Plaintiff's FCRA and CCRAA claims. (Transcript at 377:3.) In that argument, Defendant maintained that Plaintiff failed to present enough evidence to prevail on his FCRA and CCRAA claims[4] because (1) he did not submit evidence that Defendant reported the disputed loan after the investigation, and (2) he did not provide specific evidence indicating when and by whom he was denied credit. (*Id.* at 677:3–678:1.) As discussed above, the scope of a party's Rule 50(b) motion is limited to the arguments it made in its preverdict Rule 50(a) motion. *Freund*, 347 F.3d at 761. Accordingly, the Court will only address these two arguments.

### 1. Identity Theft Claim

▆▆▆ Defendant first contends that the evidence presented during trial supports a conclusion that Plaintiff's identity was not stolen. (Renewed Mot. for J. as a Matter of Law ("RJMOL") at 5.) Defendant relies heavily on the power of attorney form that Plaintiff allegedly signed, which purportedly authorized Mike Kim to purchase an automobile on Plaintiff's behalf. (*Id.*) According to Defendant, it was "undisputed and unrefuted at trial" that the signature appearing on the power of attorney document was Plaintiff's signature. (*Id.*) As such, Defendant implies that a reasonable juror could not have determined that Plaintiff's identity was stolen. The Court disagrees.

Drawing all inferences in a light most favorable to Plaintiff, there was substantial evidence presented at trial to support the jury's conclusion that Mike Kim stole Plaintiff's identity. First, Plaintiff and Mike Kim gave conflicting testimony as to whether Plaintiff authorized Mike Kim to purchase the 2007 BMW using Plaintiff's

---

4. Given that Defendant prevailed on Plaintiff's CCRAA claim, Defendant did not move

for RJMOL on the CCRAA claim.

information. Specifically, Mike Kim testified that he prepared the power of attorney and that Plaintiff signed it in his presence. (Transcript at 438:23–439:1, 439:25–440:3.) However, Plaintiff testified that he never gave Mike Kim permission to use his personal information to purchase a vehicle. (*Id.* at 364:24–365:2.) Given the conflicting testimony, the jury made a credibility determination as to whom to believe. The Court reiterates that it cannot make credibility determinations, *Reeves*, 530 U.S. at 150, 120 S.Ct. 2097, and that it must give deference to the jury's credibility findings consistent with the verdict, *Brown*, 738 F.2d at 1468 n.8. Accordingly, the Court gives deference to the jury's apparent credibility determination in Plaintiff's favor.

Additionally, the parties offered conflicting expert evidence with regard to the legitimacy of the power of attorney document. Defendant's expert testified that the form bore Plaintiff's signature and was created "in one continuous action," indicating that Plaintiff intended to authorize Mike Kim to purchase the vehicle on his behalf. (RJMOL at 6.) However, Plaintiff's expert testified that although the signature was indeed Plaintiff's, the "form had misaligned text, indicating that it had been prepared at more than one sitting." (Opp'n to RJMOL at 6.) Plaintiff also presented evidence that, years earlier, he had signed documents which Mike Kim falsely represented would help Plaintiff secure employment or a green card, and that Mike Kim could have still possessed those documents at the time he created the power of attorney form. (*Id.* at 7.) From this evidence, a jury reasonably could have inferred that Mike Kim used Plaintiff's signature from one of the previously signed documents to forge the power of attorney form. The jury also could have relied on the fact that Mike Kim admitted he had bad credit, (Transcript at 437:14–15), to infer that, given Mike Kim's poor credit history, it would be highly unlikely that Plaintiff would allow Mike Kim to use Plaintiff's personal information to purchase a car. (Opp'n to RJMOL at 5.)

Plaintiff presented evidence during the trial tending to show that Mike Kim's testimony was generally unreliable, which would have further supported the jury's decision to discredit Mike Kim's testimony. (*Id.* at 4.) In addition to the fact that Mike Kim's and Plaintiff's testimony conflicted, Mike Kim testified that he was signing the purchasing documents in Plaintiff's name, and that nobody at the BMW dealership ever asked to see his personal identifying information. (*Id.* at 5; Transcript at 454:4–6.) The jury reasonably could have inferred that a car dealership is unlikely to sell a vehicle to a person without asking for the person's identification. From this inference, the jury could have then concluded that, contrary to his testimony, Mike Kim likely produced Plaintiff's identification and forged Plaintiff's signature on the vehicle purchasing documents. (Opp'n to RJMOL at 5.)

Considering the foregoing evidence presented at trial, and drawing all inferences in the light most favorable to Plaintiff, *Reeves*, 530 U.S. at 150, 120 S.Ct. 2097, the Court must uphold the jury's conclusion that Mike Kim stole Plaintiff identity, as it is supported by "substantial evidence." *Todd*, 642 F.3d at 1215.

## 2. FCRA Claim

Defendant also contends that, based on the evidence presented at trial, a reasonable jury could not have determined that Plaintiff suffered damages caused by Defendant. (See RJMOL at 6–12.) Thus, Defendant argues that the jury should not have entered a verdict against Defendant on Plaintiff's FCRA claim and that the Court should therefore enter judgment in Defendant's favor. (RJMOL at 12.)

Defendant maintains that because the jury did not conclude that Defendant "will-

fully" violated the FCRA, Plaintiff was required to prove actual damages to prevail on that claim. (RJMOL at 7.) In fact, 15 U.S.C. § 1681o(a)(1) states that any "person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of ... any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. § 1681o(a)(1); cf. 15 U.S.C. § 1681n(a)(1) (allowing a consumer to recover from a *willful* violator of the FCRA any actual damages sustained or, in the alternative, damages between $100 and $1,000). According to Defendant, Plaintiff failed to present sufficient evidence for a reasonable jury to determine that he suffered any damages, including harm to his reputation or creditworthiness. (RJMOL at 7–12.) Defendant also argues that Plaintiff failed to establish damages because he did not provide specific evidence demonstrating a denial of credit. (*Id.*)

■ "Actual damages may include damages for humiliation, mental distress, and injury to reputation and creditworthiness, even if the plaintiff has suffered no out-of-pocket losses." *Roybal v. Equifax*, No. 2:05–cv–01207–MCE (KJM), 2008 WL 4532447, at *4–5 (E.D. Cal. Oct. 9, 2008) (citing *Thomas v. Trans Union, LLC*, 197 F.Supp.2d 1233, 1236 (D.Or.2002)); *see also Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143, 151 (5th Cir.1983) ("Even where no pecuniary or out-of-pocket loss has been shown, the FCRA permits recovery for humiliation and mental distress ... as well as for injury to one's reputation and creditworthiness.") (internal citations omitted). Also, a denial of credit is not a requirement to prove actual damages under the FCRA. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir.1995) ("[N]o case has held that a denial of credit is a prerequisite to recovery under the FCRA.").

Defendant's maintains that it completed the investigation of Plaintiff's identity theft claim on October 30, 2015, and that Plaintiff does not provide evidence establishing that Defendant made any subsequent "report" of the disputed loan, thereby damaging Plaintiff. (RJMOL at 7–12.) Plaintiff contends that Defendant "completed" its investigation on September 18, 2013, not October 30, 2013, and that Defendant allowed the disputed loan to remain on Plaintiff's credit report, which possibly caused Plaintiff to be denied credit on at least one occasion. (Opp'n to RJMOL at 10.) Plaintiff testified that he did not remember the exact dates when he was denied credit, but he did recall that there were three denials occurring sometime in 2013. (Transcript at 365:17–19.) More specifically, Plaintiff testified that Bank of America, Toyota, and Audi each denied him credit, that he applied for credit in person, and that he received no documentation when his credit was denied. (Transcript at 364:3–12.) Finally, he stated that since Defendant removed the disputed loan from his tradeline in May 2014, he has not been denied credit. (Transcript at 313:18–314:4; Opp'n to RJMOL at 10.)

■ Drawing inferences in Plaintiff's favor, Plaintiff presented circumstantial evidence at trial for a reasonable jury to determine that Defendant harmed Plaintiff's creditworthiness. Assuming Plaintiff was correct that Defendant completed its investigation on September 18, 2013, there was a period of over three months between the completion date and the end of 2013 during which at least one of Plaintiff's three credit denials could have occurred.[5] Even assuming Defendant's October 30, 2013 date is correct, there was a two-

---

5. The period of time between the date Defendant completed its investigation of Plaintiff's

month period during which a denial could have occurred. This is sufficient time for a jury reasonably to have inferred that one of the credit denials occurred after Defendant completed its investigation but before the end of 2013.

Even though a reasonable jury could have determined that one of the three credit denials occurred within the two- or three-month period of time between Defendant's completed investigation and the end of 2013, a denial of credit is not required to prove damages. *Guimond*, 45 F.3d at 1333. Thus, even assuming the jury did not conclude that Plaintiff was denied credit during the relevant time period, the jury also could have relied on the expert testimony of Thomas A. Tarter to conclude that Plaintiff's creditworthiness was harmed as a result of Defendant's failure to remove the car loan from his credit report. (Opp'n to RJMOL at 11.)

Mr. Tarter testified that the derogatory mark relating to the BMW Financial loan on Plaintiff's credit report was a "very serious" derogatory. (Transcript at 187:5–188:16.) He also stated that derogatories similar to the one at issue lead to lower credit scores, affect one's ability to obtain employment, and raise insurance costs. (Transcript at 187:22–25.) Accordingly, the jury could have inferred from this expert testimony that the mere appearance of the erroneous derogatory on Plaintiff's credit report harmed Plaintiff's reputation or creditworthiness.

In light of the foregoing, the Court must uphold the jury's conclusion that Plaintiff suffered actual damages as a result of Defendant's failure to remove the disputed loan from his credit report. *See Todd*, 642 F.3d at 1215 (requiring courts to uphold a jury's verdict if it is supported by substantial evidence).[6] Given that the

---

identity theft claim and the date Plaintiff was denied credit is relevant to establish Plaintiff's damages, as Defendant could not be liable for its negligent investigation until it completed the investigation. The time between the date Defendant completed its investigation and the date it removed the disputed loan from Plaintiff's credit report is also pertinent to damages, given that the length of time during which Plaintiff had an erroneous derogatory on his credit report directly affects the extent of the damages to his reputation or creditworthiness caused by the report.

6. Defendant raised an additional argument in its RJMOL. Namely, Defendant claimed that Plaintiff failed to present sufficient evidence for a reasonable jury to find a civil penalty against Defendant under Plaintiff's CIT claim. The Court reiterates that a party cannot "raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion." *Freund*, 347 F.3d at 761. Given this rule, the Court cannot entertain Defendant's argument, as it goes beyond the scope of Defendant's initial JMOL. During the initial motion, Defendant's counsel separated the motion into two distinct arguments. The first argument related only to the CIT claim,

and Defendant contended that the power of attorney form establishes that Plaintiff authorized Mike Kim to use Plaintiff's personal information to purchase a vehicle. (Transcript at 676:2–677:2.) The second argument was limited to the FCRA and CCRAA claims, and Defendant maintained that Plaintiff could not prove damages and that there was no evidence that Defendant reported anything after it completed its investigation. (Transcript at 677:3–678:1.) The additional argument in the RJMOL contends that there was insufficient evidence presented to the jury to support a conclusion that (1) Defendant failed to diligently investigate Plaintiff's claim of identity theft; and, (2) that Defendant continued to pursue its claim against Plaintiff after it discovered facts that were later held to entitle Plaintiff to judgment. (RJMOL at 13–14.) Plaintiff was required to prove both of these facts to recover a civil penalty under California Civil Code section 1798.93. *See* Cal. Civ. Code § 1798.93(c)(6)(B–C). However, because Defendant's JMOL argument regarding Plaintiff's CIT claim was limited to the power of attorney form and its effect on the merits of the claim, Defendant cannot now expand the scope of its argument to encompass whether Plaintiff satisfied the elements required to re-

jury's verdict as to Plaintiff's CIT claim is also supported by substantial evidence, the Court **DENIES** Plaintiff's Renewed Motion for Judgment as a Matter of Law in its entirety.

## V. MOTION FOR NEW TRIAL

Defendant's premises its Motion for New Trial on three arguments: (1) the damages are excessive; (2) the verdict against Defendant is against the weight of evidence; and, (3) the Court erred by not giving certain jury instructions. (Mot. for New Trial at 4–20.) As explained below, Defendant's Rule 50(b) Motion, Defendant's Motion for a New Trial is also **DENIED.**

### A. Legal Standard

Rule 59(a) governs whether a court should grant a motion for a new trial. Fed.R.Civ.P. 59(a). Under Rule 59(a), a new trial may be granted to any party on all or part of the issues, "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a). The grounds upon which a court may grant a new trial are not enumerated in Rule 59(a). Nevertheless, courts commonly grant new trials "if the verdict is contrary to the clear weight of evidence ... or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir.2007) (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n. 15 (9th Cir.2000)).

■■■■ In considering a motion for a new trial, the court must "determine whether the verdict is consistent with the evidence after considering all of the events of trial. The judge must review the evidence, view all the evidence as a whole, and weigh the relative strengths and weaknesses of the evidence." *Turnbull v.*

cover a civil penalty under the California Civil Code. Accordingly, the Court cannot entertain

*Am. Broad. Cos.*, No. CV 03–3554–SJO (FMOx), 2005 WL 6054964, at *2 (C.D.Cal. Mar. 7, 2005) (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 59.13[2][f] ). A new trial may be granted "only if the verdict is so clearly against the weight of evidence as to amount to a manifest miscarriage of justice." *Id.; accord E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir.1997) (stating that a new trial may be granted "only if the verdict is against the great weight of the evidence or it is quite clear that the jury has reached a seriously erroneous result").

■■■■ The corollary to this principle is that a court "must uphold a jury verdict if it is supported by substantial evidence." *Guy v. City of San Diego*, 608 F.3d 582, 585–86 (9th Cir.2010). Evidence is sufficiently "substantial" to support a jury's finding when it is " 'adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion.' Specifically, [courts] must uphold a jury's damages award unless the amount is 'clearly not supported by the evidence, or only based on speculation or guesswork.' " *Id.* (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir.2002); *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1360 (9th Cir.1986)). Moreover, the Court has "a duty 'to reconcile the jury's special verdict responses on any reasonable theory consistent with the evidence.' " *Id.* at 586 (quoting *Pierce v. S. Pac. Transp. Co.*, 823 F.2d 1366, 1370 (9th Cir.1987)); *accord Gallick v. Baltimore & O.R. Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963) ("We therefore must attempt to reconcile the jury's findings, by exegesis if necessary, ... before we are free to disregard the jury's special verdict and remand the case for a new trial."); *Atl. & Gulf Stevedores, Inc. v. Ellerman*

Defendant's Motion with regard to this argument. *Freund*, 347 F.3d at 761.

*Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.").

### B. Discussion

#### 1. Excessive Damages Argument

██ Defendant first argues that the damages awarded were excessive, and the Court should accordingly order a new trial. (Mot. for New Trial at 4.) Defendant requested that the Court take judicial notice of three jury verdicts in other FCRA cases, which it apparently intended to use to support its contention that the jury's award was unreasonably high. (2d RJN ¶¶ 4–6, Exs. 4–6.) As discussed above, the Court takes judicial notice of these verdicts. *See* discussion *supra* Section III. While each verdict indicates that the jury found the defendant willfully violated the FCRA, two of the three forms specify that the jury also found the defendants to have negligently violated the statute. (2d RJN ¶¶ 4–6, Exs. 4–6.) Given that the two verdicts separate the amount of damages awarded for the "willful" and "negligent" violations, the verdicts are instructive as to the reasonableness of the jury award in this case. (*See id.*) In one case, the jury awarded $300,000 for the defendant's negligent violation of the FCRA, and in the other case the jury awarded $180,000 for the same violation. (*Id.* ¶¶ 4–5, Exs. 4–5.) Here, the jury awarded $250,000 for Defendant's negligent FCRA violation, (Dkt. No. 159), a sum that is slightly above the average of the two verdicts lodged by Defendant. Given that the award here is similar to other awards for negligent FCRA violations, the Court finds that the jury's $250,000 award was not unreasonable.

██ Regarding the $30,000 civil penalty for Defendant's CIT violation, that award was within the statutory limit. *See*

Cal. Civ.Code § 1783.93(c)(6). Thus, the $30,000 award was not excessive. And as to the $150,000 for Defendant's violation of the CIT statute, Defendant provides no authority to support its argument that this award was excessive. Defendant merely argues that the award is against the weight of evidence. (Mot. for New Trial at 4–8.) For the reasons discussed above, there was substantial evidence presented at trial to support the jury's conclusion that Mike Kim stole Plaintiff's identity. *See* discussion *supra* Section IV.B.1. Accordingly, the Court finds that this award was also not unreasonable.

#### 2. Verdict Against the Weight of Evidence Argument

For the reasons discussed above in Section IV.B, the Court finds that Plaintiff presented substantial evidence during the trial to allow a reasonable jury to conclude that Plaintiff's identity was stolen. *See* discussion *supra* Section IV.B.1. The evidence was also sufficient to for a reasonable jury to determine that Plaintiff suffered actual damages to his reputation or creditworthiness as a result of Defendant's negligent FCRA violation. *See* discussion *supra* Section 4.B.2. Accordingly, the Court declines to grant Defendant's Motion on this ground, as the verdict was not against the weight of the evidence presented at trial.

#### 3. Jury Instructions Argument

Lastly, Defendant contends that the Court erred by failing to (1) instruct the jury that Plaintiff could not recover damages under the FCRA for a dispute made directly with Defendant; and, (2) instruct the jury as to the definition of a reasonable investigation under the FCRA. (Mot. for New Trial at 17–18.)

##### a. Direct Dispute Instruction

██ Prior to trial, Defendant proposed an instruction that read as follows:

Under the FCRA, a consumer cannot bring a lawsuit against a furnisher for failure to conduct a reasonable investigation when the consumer disputes the information directly with the furnisher. (Mot. for New Trial at 17.) Defendant argues that because Plaintiff both directly and indirectly disputed his account with Defendant, Defendant's instruction was warranted. (*Id.* at 17–18.)

Defendant correctly points out in its motion that the FCRA does not permit private rights of action for direct disputes. *See Gustafson v. Experian Info. Solutions, Inc.*, No. 2:14–cv–01453–ODW (Ex), 2014 WL 2115210, at *2 (C.D.Cal. May 21, 2014) ("FCRA expressly limits a private action against a furnisher to only damages arising out of a furnisher's failure to comply with the investigation requirements triggered upon a credit-reporting-agency dispute notice. That is, a consumer has no ability to bring suit against a furnisher for failure to conduct a reasonable investigation when the consumer disputes the information directly with the furnisher. Enforcement of, among others, § 1681s–2(a) is left to federal and state agencies and officials") (internal citations omitted). However, Plaintiff's theory of FCRA liability is predicated upon indirect disputes, not direct disputes. (*See* Opp'n to Mot. for New Trial at 22.)

■ As explained by the Ninth Circuit in *Gorman v. Wolpoff & Abramson, LLP,* a furnisher's obligation to conduct a reasonable investigation arises upon its notice of a dispute sent from a credit reporting agency ("CRA"). Although the content of the automated credit dispute verification process ("ACDV")[7] sets forth the nature

of the dispute, the ACDV does not "cabin [ ] the scope of the investigation once undertaken." 584 F.3d 1147, 1157 n. 11 (9th Cir.2009). Thus, *Gorman* does not stand for the principle that a furnisher need only reasonably investigate the contents of the ACDV. If Plaintiff provided Defendant with information relevant to the nature of the dispute, as set forth in the ACDV, *Gorman* suggests that Defendant had an obligation to consider this information in conducting a reasonable investigation. *Id.* at 1157 ("The pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute.").

In sum, Defendant's proposed instruction would have been unnecessary because Plaintiff proceeded on a theory of FCRA liability based upon Defendant's responses to indirect disputes. Because the case law suggests Defendant should have considered information it received directly from Plaintiff that was relevant to the indirect disputes, Defendant's proposed instruction would have risked confusing the jury and prejudicing Plaintiff. Thus, the Court did not err in refusing to give Defendant's instruction.

#### b. Reasonable Investigation Instruction

■ Defendant also proposed an instruction defining "reasonableness" as it applies to the investigation required by the FCRA. The instruction read as follows:

The term "reasonable investigation" under the Fair Credit Reporting Act depends on the facts of a particular case; most importantly is the Credit Report-

---

7. When a consumer disputes information reported to a CRA, the CRA refers the dispute to the furnisher of the information by means of an ACDV report or transmission. This process is referred to as an "indirect dispute." A consumer may also bring a "direct dispute"

by directly contacting the furnisher about the information he or she disputes. Under the FCRA, private rights of action exist only with respect to indirect disputes. In this case, Plaintiff filed seven indirect disputes with three CRAs.

ing Agency's description of the dispute in its notice. An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate. (Mot. for New Trial at 18–19.) In *Gorman*, the Ninth Circuit joined the Fourth and Seventh Circuits in holding that a furnisher's obligation to "conduct an investigation" impliedly requires that the investigation be reasonable. *See* 584 F.3d at 1157 ("We thus follow the Fourth and Seventh Circuits and hold that the furnisher's investigation pursuant to § 1681s–2(b)(1)(A) may not be unreasonable."). The *Gorman* court went on to consider whether the defendant's investigation was reasonable. The court noted that "a furnisher's obligation to conduct a reasonable investigation under § 1681s–2(b)(1)(A) arises when it receives a notice of dispute from a CRA .... The pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Id.* The *Gorman* court clarified this language in a footnote, stating that "[i]n deciding that the notice determines the nature of the dispute to be investigated, we do not suggest that it also cabins the scope of the investigation once undertaken." *Id.*

While the language in Defendant's proposed instruction reproduces language from the *Gorman* decision, the language appears as dicta. *See id.* at 1160 ("Gorman misreads *Johnson*, which recognized that the reasonableness of an investigation depends on the facts of the particular case, most importantly the CRA's description of the dispute in its notice."); *see also id.* at 1161 ("We emphasize that the requirement that furnishers investigate consumer disputes is procedural. An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion

turns out to be inaccurate."). Further, the jury was instructed on Defendant's duty under the FCRA to conduct a reasonable investigation of the disputed information in Instruction Number 23. (Dkt. No. 145–1 at 24.) Lastly, Defendant cites no case law requiring the Court to include a definition of the term "reasonable" in the jury instructions. Accordingly, the Court did not err by declining to give a jury instruction defining "reasonable" under the FCRA.

Given that all of Defendant's arguments fail, the Court **DENIES** Defendant's Motion for New Trial.

## VI. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motions for (1) Renewed Judgment as a Matter of Law, and (2) a New Trial.

**IT IS SO ORDERED.**